# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Leon Henry Carter, III, | Case No. 19-cv-0670 (NEB/HB) |
| Plaintiff, | |
| v. | **ORDER and**<br>**REPORT AND RECOMMENDATION** |
| Tom Roy and Bruce Reiser, | |
| Defendants. | |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendants Tom Roy and Bruce Reiser's Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss") [Doc. No. 40], Plaintiff Leon Henry Carter, III's ("Carter") Motion for Injunctive Relief [Doc. No. 49], and Carter's Motion for Leave to Supplement the Complaint [Doc. No. 89].[1]  The motions were referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

## I.    Background

During the relevant events, Carter was an inmate at two different Minnesota Correctional Facilities ("MCF")—Rush City and Faribault.  The central allegation in the complaint is that Carter severely injured his lower back while in the custody of the Minnesota Department of Corrections ("DOC").  (Compl. ¶ 1 [Doc. No. 1].)  He suffered an "attempted bilateral hemi sacralization of the L5; mild to moderate spondylosis; [and,] focal

---

[1]  The Court will address separately the parties' Joint Motion Regarding Continued Sealing of Documents [Doc. No. 88] and Carter's Motion to Seal Complaint and Related Confidential Exhibits [Doc. No. 94].

right central disc extrusion moderately impinging L5" (Compl. ¶ 28) on June 28, 2010, in the gym at Rush City, or, on July 15, 2011, while working his prison job (Compl. ¶ 1). Carter alleges that his injury was ongoing until November 7, 2014, because of medical malpractice, breach of customary medical practices, and negligent misrepresentations. (*Id.*)

With respect to the gym injury, Carter claims that Defendants Tom Roy (the former Commissioner of the Minnesota Department of Corrections) and Bruce Reiser[2] removed weightlifting belts from the gym area. (Compl. ¶ 19.) Roy and Reiser also allegedly failed to provide adequate supervision or training to staff or offenders in the gym area of the prison. (Compl. ¶¶ 21, 22, 25, 26.) Carter alleges that Roy and Reiser should have known the amount of weight available for him to lift in the gym was simply too heavy for him without proper instruction or protective equipment. (Compl. ¶ 21.) Additionally, Carter alleges that Roy and Reiser failed to promptly diagnose and treat his injury because a physician's assistant, Jenefer Southwick, misdiagnosed it as strained muscles. (Compl. ¶ 20.)

With respect to the workplace injury, Carter alleges that on July 15, 2011, and for many months prior, he was an employee at Rush City through the prison jobs program. (Compl. ¶ 42.) His job frequently required heavy lifting, as was the case on July 15, 2011, when he worked the morning shift. (Compl. ¶¶ 42, 43.) On that date, he "bent down and picked up one of the boxes and the disks in between his spine had snapped and broken, pushing the disk forward striking nerves causing great pain in the lower back and legs

---

[2] Carter alleges that Reiser was the Warden at Rush City from 2010 through 2012 and the Warden at Faribault from 2013-2015. (Compl. ¶ 114.)

causing an inability to walk." (Compl. ¶ 49.) The injury ultimately caused a loss of feeling in part of the left leg. (Compl. ¶ 50.) He alleges that his prison employer failed to train or guide him when he lifted heavy materials beyond his capacity, and the employer failed to provide safety equipment like a back brace. (Compl. ¶ 44.) Additionally, he alleges that Roy and Reiser failed to have policies, practices, or procedures that required or helped prison employers to protect prison employees' safety. (Compl. ¶ 45.)

Carter writes (somewhat in tension with his argument about the gym injury) that he "had no back problems prior to the July 15, 2011 work injury. [And he] had not been diagnosed as having broken disk or spondylosis of the spine of his back prior to the July 15, 2011 work related back injury which caused the disks to break and form spondylosis." (Compl. ¶ 46.) Carter alleges that from July 15, 2011, to the present his pain has gotten progressively worse, impairing his mobility and his ability to do normal daily activities. (Compl. ¶ 52.) According to Carter, the work-related back injury is attributable to Roy and Reiser because they failed to follow reasonable safety and security procedures in their oversight of the prison jobs program at Rush City. (Compl. ¶¶ 53-55.)

Carter claims that he was not diagnosed with any significant back injury until November 7, 2014, when he was diagnosed with "mild to moderate spondylosis." (Compl. ¶ 56.) In his opinion, if he had any back injury prior to July 15, 2011, it was exacerbated when he broke his L5 disk on that date. (*Id.*) He claims that "the MRI results indicate it was the July 15, 2011 and the February 28, 2011[3] work injury or the combination of both

---

[3] Despite claiming that the injury occurred on July 15, 2011, Carter adds later in the complaint that on February 28, 2011, he injured his lower back while working in the kitchen

3

work-related back injuries and the gym room weight lifting incident and the subsequent disc shifting incidents that caused the resulting osteoarthritis in this case." (Compl. ¶ 57.)

Further, Carter alleges that Roy and Reiser had an ongoing duty to provide him with adequate medical care, but they failed to do so. (Compl. ¶¶ 82-86.) He reported being seen by healthcare after each incident of injury and being prescribed painkillers and/or ice, and rest. (Compl. ¶ 91.) It was not until November 7, 2014, that he saw a doctor for an MRI. (*Id.*) Carter claims that he was consistently diagnosed with muscle spasms in order to delay recognition that he had a broken back. (Compl. ¶ 92.) He alleges that Roy and Reiser are responsible for three years of willful delays in medical treatment because they "placed a greater value on the efficiency in the use of monetary and/or medical resources for medical services profitability purposes, instead of due diligence by responsible practitioners, officers and employees." (Compl. ¶¶ 109-10.) Carter claims that the "action arise[s] not as a result of a single occurrence but a series of incidents, a continuous chain of torts because not one incident standing alone can be fairly identified as the cause of the serious harm alleged in this Complaint." (Compl. ¶ 111.) He alleges that at all relevant times Roy and Reiser had actual and constructive knowledge of his injuries and need for treatment but failed to do anything about it. (Compl. ¶¶ 113-14.)

Carter brings five distinct counts: (1) medical malpractice against Roy and Reiser; (2) negligent misrepresentation by Roy and Reiser; (3) breach of customary practices of medical institutions by Roy and Reiser; (4) gross negligence by Roy and Reiser; and

---

moving boxes for a delivery truck at Rush City. (Compl. ¶ 91.) As shown below, the specific date of the injury is ultimately inconsequential to the analysis.

4

(5) deliberate indifference to a medical need pursuant to 42 U.S.C. § 1983. (Compl. ¶¶ 116-

60.) In the prayer for relief, he seeks injunctive relief in the form of immediate surgery,

damages in excess of $500,000 for his personal injury, consequential damages in excess of

$500,000, damages as determined by the life tables, and such other relief as the Court deems

equitable and appropriate. (Compl. ¶ 170.)

The undersigned previously recommended dismissal of four defendants from this

action (the State of Minnesota, the Minnesota Department of Corrections, Bruce Anderson,

and Duane Quam). (R. & R. at 5 [Doc. No. 5].) United States District Judge Nancy E.

Brasel accepted the Report and Recommendation on July 25, 2019. (Order at 1 [Doc. No.

32].) The remaining defendants (Roy and Reiser) moved for dismissal of all remaining

claims, or alternatively for a stay of adjudication, on August 2, 2019.

Roy and Reiser contend that any claims arising from the July 2011 work injury

should be dismissed because a Minnesota statute provides an exclusive remedy for those

claims. (Defs.' Mem. Supp. Mot. Dismiss at 7 [Doc. No. 42].) They seek dismissal of

Count 2 (negligent misrepresentation), Count 4 (gross negligence) and Count 5 (§ 1983) as

barred by Minnesota's six-year statute of limitations. To support this argument, they

contend that the injury occurred at the latest on July 15, 2011, when Carter was aware that

he sustained a back injury of some nature, despite the fact that the severity may have

become more apparent over the years. (*Id.* at 8-9.) They argue that the prolonged nature of

the injury, or the fact that he got a more specific diagnosis in 2014, goes to the extent of

damages, not the existence of an injury triggering the statute of limitations. (*Id.* at 9.) Thus,

they submit, the statute of limitations expired on July 15, 2017, about two years before the

complaint was filed. As to the medical malpractice claims (Counts 1 and 3), Roy and Reiser

argue they are time-barred by a four-year statute of limitations.  (*Id.* at 9-10.)

Alternatively, Roy and Reiser argue that all of Carter's claims under 42 U.S.C.

§ 1983 fail as a matter of law for five reasons: (1) he did not allege specific individual

involvement by these defendants; (2) there was no objectively serious risk of harm to

Carter's safety because he was not entitled to special exercise or work equipment; (3) there

is no supervisory liability under § 1983; (4) even if there were personal involvement or

supervisory problems, there was no deliberate indifference to the back injury; and (5) they

are entitled to qualified immunity because no clearly established right was violated.  (Defs.'

Mem. Supp. Mot. Dismiss at 12-16.)

As to the medical malpractice, negligent misrepresentation, and gross negligence

claims, Roy and Reiser argue in the alternative that they are not proper defendants to those

claims.  (*Id.* at 16-22.)  They also ask this Court to decline to exercise supplemental

jurisdiction over the state-law claims.  (*Id.* at 22-23.)

In the alternative to dismissal, Roy and Reiser ask that the case be stayed pending the

final resolution of a similar case pending in the Minnesota Court of Appeals.  (*Id.* at 6.)  *See*

*Carter v. Quam*, Case No. A19-0539 (Minn. Ct. App. filed Apr. 5, 2019).

Carter responded to the motion to dismiss on September 5, 2019.  He contends that

the case cannot be stayed because this Court already inherently assumed jurisdiction by

conducting a preliminary screening and dismissing some defendants from the case.  (Pl.'s

Mem. Opp'n Mot. Dismiss at 6-7 [Doc. No. 79].)  He argues that he has suffered a

continuation of torts and constitutional violations, so the statute of limitations does not bar

his claims. (*Id.* at 5-9.) Specifically, he contends that he did not know of the torts until November 2014 because he was misdiagnosed up until that date, and thus he argues his damages did not occur until then. (*Id.* at 9-13.) As to his § 1983 claim, Carter argues that he has a serious medical need because his daily activities are impaired; the defendants knew of the problem via incident reports; and they delayed or denied his access to proper treatment. (*Id.* at 13-16.) He also argues that Defendants are liable for "failure to protect" under the Eighth Amendment because they knew or should have known of the dangerous exercise and work conditions. (*Id.* at 16-22.) Finally, Carter contends his medical malpractice, negligent misrepresentation, and gross negligence claims state plausible claims for relief. (*Id.* at 22-29.)

Roy and Reiser filed a reply on all issues. As to Carter's contention that his injury falls within a continuing injury doctrine, they counter that a failure to make a correct diagnosis is not a continuing omission that tolls a limitations period. (Defs.' Reply at 4-5 (*citing D'Amaro v. Joyce,* 297 F.3d 768, 771 (8th Cir. 2002)) [Doc. No. 85].) They also argue that his § 1983 failure-to-diagnose-and-treat or failure-to-protect claims are insufficient as a matter of law because he does not allege sufficient personal involvement by either Roy or Reiser. (*Id.* at 6.) Even if personal involvement were established, Defendants argue that the allegations do not plausibly suggest they acted with deliberate indifference in their roles as Commissioner of Corrections and warden. (*Id.* at 7-9.) Defendants submit they are not liable for a failure to protect either individually or as supervisors because there is no plausible allegation that they knew of a patently dangerous condition and willfully ignored it. (*Id.* at 10-13.) Finally, they contend that the state law claims should fail as a

matter of law or should not fall within the specter of pendant jurisdiction.  (*Id.* at 13-15.)

## II.    Legal Authority Applicable to Roy and Reiser's Motion to Dismiss

### A.    Rule 12(b)(6)

On a motion to dismiss brought pursuant to Rule 12(b)(6), the Court "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court has the duty to construe liberally a pro se party's pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.  As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint.

8

*See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

###    B.    Eighth Amendment

In order to establish an Eighth Amendment failure-to-protect claim, a plaintiff must show that the prison official was deliberately indifferent to a "substantial risk of serious harm." *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007) (*citing Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To succeed on such a claim, the plaintiff must first establish that the alleged constitutional deprivation was "objectively, sufficiently serious," which requires a showing that the official's failure to protect resulted in the inmate being "incarcerated under conditions posing a substantial risk of serious harm." *Id.* A plaintiff must also show that the defendant knew of and disregarded an excessive risk to plaintiff's safety. *Smith v. Ark. Dep't of Corr.*, 103 F.3d 637, 644 (8th Cir. 1996).

Here, both of Plaintiff's claims—the claim relating to his gym injury and the claim relating to his work injury—allege that Defendants failed to protect him from injury. As to the gym injury claim, he alleges that Defendants used to provide protective equipment for weightlifting, but that it was removed; he suggests that had he had access to such equipment, he would not have been injured. As to his work injury claim, it is not clear what Plaintiff alleges should have been done differently to prevent his injury, although he suggests generally that he should have been provided with safety equipment and training or supervision about lifting heavy items.

Cases addressing the lack of protective equipment arise most often in the prison work

context.[4]  The Eighth Circuit has held that "prison officials are deliberately indifferent when they knowingly compel 'an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful.'"  *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (*quoting Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007).  In *Kulkay*, an inmate received minimal training from an inmate-coworker on the operation of a beam saw, which lacked protective guards, and he sawed off three fingers.  He argued that the conditions presented an objective risk of serious harm due to the lack of training or protective guards, and that prison officials were deliberately indifferent to the risk because the saw came with protective guards, other inmates had suffered similar injuries, no training was given, the lack of protection violated state safety regulations, and the defendants were responsible for ensuring workplace safety.  *Id.* at 643.  Nevertheless, the Eighth Circuit dismissed Kulkay's claims, holding that even if it were assumed that the conditions presented an objectively serious risk, Kulkay failed to allege facts showing that the defendants were deliberately indifferent to it, because the absence of safety equipment and the occurrence of similar injuries did not impute to prison officials knowledge of these conditions or the risk of harm they represent, or show that they willfully overlooked those risks.  *Id.* at 644.

Similarly, in *Stephens v. Johnson*, 83 F.3d 198 (8th Cir. 1996), the Eighth Circuit upheld a district court's entry of judgment as a matter of law against plaintiff inmates who

---

[4] This is perhaps not surprising, as courts have generally held that there is no obligation under the Eighth Amendment to provide *any* exercise equipment.  *See, e.g.*, *Anderson v. Coughlin*, 757 F.2d 33, 37 (2nd Cir. 1985); *Casey-El v. Greenwell*, 2005 WL 2298199 *1, *4 (E.D. Mo. Sept. 21, 2005).

claimed that prison officials showed a deliberate indifference to their safety when they required the inmates to move heavy furniture in a warehouse without steel-toed boots, safety belts, back braces, hard hats, or protective eyewear. *Id.* at 200. The plaintiffs claimed they had injured their backs while lifting furniture on the job and sustained knee and foot injuries jumping or climbing about to handle goods in the warehouse. *Id.* "Even giving the inmates the benefit of all reasonable inferences, we believe that they have failed to establish that [defendant] was deliberately indifferent to their health and safety. In the workplace safety context, we have held that mere negligence or inadvertence is insufficient to constitute deliberate indifference." *Id.* The court also catalogued other cases in which inmates claimed their Eighth Amendment rights had been violated where prison officials allegedly knew safety equipment was missing or had been removed but had failed to replace or repair it, but the claims were dismissed, either at the Rule 12(b)(6) stage or on summary judgment. In each case, the court found there was no constitutional violation because "even assuming that prison officials 'had knowledge of the allegedly similar prior accidents . . . this showing falls far short of creating a genuine issue of deliberate indifference to a serious issue of work place safety.'" *Id.* at 201 (citing *Warren v. Missouri*, 995 F.2d 130, 131 (8th Cir. 1993)); *see also Bibbs v. Armontrout*, 943 F.2d 26, 27 (8th Cir. 1991).

As for failure to train, a prison official can be held responsible for failing to train only if the training practices were inadequate, the failure to provide further training was deliberate, and a deficiency in the training actually harmed the plaintiff. *Ambrose*, 474 F.3d at 1079-80. "For liability to attach, [the plaintiff] must show 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional

rights, that [the warden] can reasonably be said to have been deliberately indifferent to the need.'" *Id.* (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (citations omitted)).

In order to state a cognizable Eighth Amendment claim regarding treatment of a medical condition, a prisoner must allege acts or omissions sufficiently harmful to show deliberate indifference to serious medical needs. *Estelle*, 429 U.S. at 106; *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993). In the context of a claim of inadequate medical care, the prisoner must demonstrate more than medical negligence. *Givens v. Jones*, 900 F.2d 1229, 1232 (8th Cir. 1990). The "deliberate indifference to a serious medical need must rise to the level of an unnecessary and wanton infliction of pain." *Jorden v. Farrier*, 788 F.2d 1347, 1348 (8th Cir. 1986). A serious medical need is a need that has been diagnosed as requiring treatment or is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Failure to treat a medical condition is not improper under the Eighth Amendment unless prison officials knew that the condition created excessive risk to the prisoner's health and then failed to act on that knowledge. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (*citing Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)).

An inmate's mere disagreement with a course of treatment does not constitute deliberate indifference. *Allard v. Baldwin,* 779 F.3d 768, 772 (8th Cir. 2015). "A plaintiff can show deliberate indifference in the level of care provided in different ways, including showing grossly incompetent care, showing a defendant's decision to take an easier and less efficacious course of treatment, or showing a defendant intentionally delayed or denied

access to medical care." *Id.* at 772 (internal citations omitted).

Finally, it is important to note that supervisors in a prison setting cannot be held liable under § 1983 on a respondeat superior theory. They can only be held liable for violation of the Eighth Amendment prohibition against cruel and unusual punishment in two ways: (1) because of their personal involvement in a constitutional violation; or (2) when their corrective inaction in response to prior constitutional violations amounts to deliberate indifference or tacit authorization of those violative practices. *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). Thus, in *Choate,* a supervisor was not liable for an inmate's workplace injury when the supervisor did not have personal knowledge of the inmate's prior medical condition, did not assign him to the job, had no personal involvement in the events that led to his injury, and there was no evidence of prior similar constitutional violations of which the supervisor had notice and in response to which he failed to take corrective action. Similarly, a supervisor who is not involved in treatment decisions and lacks medical expertise cannot be held liable for the medical staff's diagnostic decisions. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). "[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos*, 73 F.3d at 176.

## C.    Statute of Limitations

The statute of limitations for actions under 42 U.S.C. § 1983 in Minnesota is six years. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 n.5 (8th Cir. 1995) ("In Minnesota, § 1983 claims are governed by the six-year limitations period of Minnesota's personal-injury statute."). A claim accrues when "the plaintiff can file suit and obtain

13

relief." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997).

### III.    Discussion of Roy and Reiser's Motion to Dismiss

#### A.    Defendants' Request to Stay the Case

Roy and Reiser request a stay because parallel state court litigation concerning the same or similar facts and parties is currently before the Minnesota Court of Appeals.  This Court finds a stay unnecessary and unwarranted because, as will be discussed, Carter's § 1983 and state court claims in this Court against Roy and Reiser should be dismissed. This resolution will result in *more efficient* judicial resolution of litigation for the parties and the Court, rather than the *less efficient* option of waiting for all litigation of all claims to conclude in state court before dismissing Carter's claims.  Accordingly, the Court does not recommend that the case be stayed.

#### B.    Section 1983 Claims

Carter first sustained an injury while exercising in the prison gym on June 28, 2010. Viewing the record in the light most favorable to him, he alleges that the prison at one time provided weightlifting belts, and he surmises that prison officials were therefore aware of the risk of injury of using the weightlifting equipment without the belts.  (Pl.'s Mem. Opp'n at 20.)  This allegation does not give rise to liability under a theory of failure to protect or deliberate indifference to a medical condition, however.  To plausibly allege a failure to protect, Carter must allege that Roy and Reiser were aware of an objectively serious danger and that they failed to act to mitigate the risk.  *Young*, 508 F.3d at 872.  Carter's conclusory allegations are not sufficient to plausibly allege that providing weightlifting equipment

14

without weightlifting belts presented an objectively serious danger.  Indeed, Carter's own conduct is inconsistent with a conclusion that the circumstances here presented an objectively serious risk.  Unlike the workplace setting where an inmate may have no choice but to perform the tasks regardless of the presence or absence of risk or safety equipment, Carter was under no obligation to use the weightlifting equipment.  He nevertheless chose to use it even though there was no belt available and no training offered.

What is more, nothing in his allegations shows that Roy and Reiser were aware of an objectively serious danger but failed to act.  Even if they knew weightlifting belts had once been available but had subsequently been removed (and nothing in the complaint attributes such knowledge to them), that does not come close to showing they knew that the use of the weightlifting equipment without belts presented an objectively serious danger.  In this regard, the Court finds persuasive the Eighth Circuit case law consistently holding that the existence of an objectively serious danger in the prison workplace does not equate to knowledge or deliberate disregard of the risk.

Carter alleges that after his injury he corresponded with Roy and Reiser via inmate "kites" and they did nothing to remedy the dangerous situation he complained of.  (*Id.* at 18-19).  But notifying a prison official of an injury *after* it occurs does not show that the official knew of and should have mitigated the risk *beforehand*.  *Smith*, 103 F.3d at 644.  Thus, this Court recommends dismissal under Federal Rule of Civil Procedure 12(b)(6) of Carter's § 1983 claim based on the alleged failure to protect him from the gym injury because his complaint does not plausibly allege an objectively serious danger or that Roy and Reiser knew of it, let alone that they deliberately disregarded it.

Carter's § 1983 workplace safety claim also fails to state a claim on which relief can be granted. In this regard, the Eighth Circuit's decision in *Stephens* is highly instructive. There, the court found that "[s]imply failing to provide inmates who move furniture with steel-toed boots, protective eyewear, and hard hats, for example, does not establish a constitutional violation any more than failing to install a safety device on a saw despite knowledge of prior injuries." *Stephens*, 83 F.3d at 201. "To convert conduct that does not even purport to be punishment into conduct violative of the Eighth Amendment, more than ordinary lack of due care for the prisoner's interests or safety must be shown." *Id.* (cleaned up).

Here, as in *Stephens,* Carter's allegations, construed liberally and presumed to be true, fall far short of plausibly alleging that Roy or Reiser knew of safety problems, knew that they created an objectively serious risk, and were deliberately indifferent to it. Even if one assumes, *arguendo,* that moving heavy boxes without training or safety equipment constituted an objectively serious danger, Carter does not allege facts that reasonably impute knowledge of the risk to Roy or Reiser. Even if the Court takes the next leap and assumes, again *arguendo,* that they knew of risks in the working conditions, Carter does not plausibly allege facts that show they were personally involved or were otherwise deliberately indifferent to it, particularly in view of Eighth Circuit precedent such as *Stephens*, *Kulkay*, *Bibbs*, *Warren*, and *Choate*. Accordingly, this Court also recommends dismissal of this claim for failure to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6).

Finally, the Court also recommends dismissal on the same ground of Carter's § 1983

claim of deliberate indifference to a serious medical need.  The most his allegations show is that he disagreed with the approach taken to his treatment, and perhaps that his early treatment could have been more aggressive and might thus have been more effective.  His back problems were initially treated as muscle spasms.  When the treatment proved ineffective and symptoms progressed, he received an MRI and a different diagnosis.  That does not sufficiently allege deliberate indifference even for the medical provider, let alone a prison supervisor.  *See Allard,* 779 F.3d at 772.  Carter does not allege that either Roy or Reiser had personal involvement in the decisions about his treatment, or that they possessed medical knowledge that qualified them to interject themselves into the diagnostic and treatment decisions of their medical staff.  Nor does he allege that they knew or believed he was being denied medical care for his injuries altogether.  Therefore, Carter's complaint does not adequately plead a claim against either Roy or Reiser for deliberate indifference to a serious medical need under the Eighth Amendment.

### C.    Statute of Limitations

Carter's Eighth Amendment claims regarding his alleged gym and workplace injuries should also be dismissed because they are also barred as a matter of law by the six-year limitations period.  *See Egerdahl*, 72 F.3d at 618 n.5.  The crux of these claims is that Roy's and Reiser's constitutional violations in failing to protect him against injury in the gym and injury in the workplace caused Carter to be injured.  Those injuries occurred on June 28, 2010, July 10, 2011, or somewhere in between.  Carter knew he was injured when they occurred, although he may not have known how seriously.  He also knew how his injuries were sustained and he knew the basic facts—that he had not been trained and/or that he did

not have protective equipment—upon which he now bases his claims for relief. Accordingly, his claims accrued as of the dates his injuries occurred. Both of those dates were more than six years before March 12, 2019, the date he filed this lawsuit.

Carter argues that the limitations period for these claims continues to run, as his injuries resulting from those incidents continued to develop beyond the date of the initial injuries. But the ongoing nature of Carter's injuries is irrelevant to when his failure to protect claims first accrued. *See, e.g. Antone v. Mirviss,* 720 N.W.2d 331, 334 (Minn. 2006). Accordingly, these claims can be dismissed on the alternative ground that they are barred by the relevant statute of limitations.[5]

### D.    Supplemental Jurisdiction

In light of the Court's recommendation that the § 1983 claims be dismissed, the Court recommends that the District Court decline to exercise supplemental jurisdiction over all remaining state law claims. The only basis for federal jurisdiction over the state law claims is 28 U.S.C. § 1367(a), which provides for "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." A court should decline to exercise supplemental jurisdiction over a state law claim when all claims over which the court has original

---

[5] Analyzing the application of the statute of limitations to Carter's claim of deliberate indifference to medical needs is more difficult, however, as he identifies several discrete instances over time on which he alleges his rights were violated by inadequate medical treatment. *See, e.g., MacRae v. Group Health Plan, Inc.*, 753 N.W.2d 711, 716-17 (Minn. 2008) (discussing accrual principles for medical malpractice or failure to diagnose claims). As the Court has recommended dismissal of this claim on another ground, the Court will not attempt to unpack the various dates of treatment and the various arguments concerning the application of the statute of limitations to that claim.

jurisdiction are dismissed. *See Clark v. Roy*, No. 13-cv-2849 (MJD/HB), 2015 WL 1179380, at *3 (D. Minn. Mar. 13, 2015); *see also* 28 U.S.C. § 1367(c)(3). Accordingly, the Court recommends that the District Court dismiss without prejudice for lack of subject matter jurisdiction Carter's state law claims.

## IV.    Other Pending Motions

### A.    Carter's Motion for Injunctive Relief

On August 13, 2019, Carter filed a motion for injunctive relief [Doc. No. 49] and accompanying memorandum [Doc. No. 51], in which he asks to be scheduled to be seen by a spine specialist for surgery or other corrective measures. He also seeks to restrain Roy and Reiser (or the DOC) from taking any actions to distort or misrepresent his medical needs. (Pl.'s Mem. Supp. Mot. Injunc. Relief at 1-2 [Doc. No. 51].) As Roy and Reiser argue in their response to the motion, a preliminary injunction cannot issue if there is no chance of success on the merits. *See Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013) (likelihood of success on the merits is the most important factor to consider regarding injunctive relief). Here, this Court has recommended dismissal of all claims in this litigation; thus, there is no chance, at least in this Court's estimation, of Carter succeeding on the merits of any claim. Therefore, this Court recommends denying the request for injunctive relief.

### B.    Carter's Motion to Supplement the Complaint

On October 11, 2019, Carter filed a Motion to Supplement the Complaint to add a claim or claims against Nola Karow—a nurse with the Minnesota Department of Corrections. [*See* Doc. No. 89.] Specifically, Carter alleges that on May 5, 2019, he had a

19

medical incident where he collapsed at the prison due to lower lumbar pain. (Proposed Am. Compl. ¶ 1 [Doc. No. 89-1].) He expresses dissatisfaction about the medical response, but he does not specifically raise claims against any of the medical providers. Instead, he alleges one count of deliberate indifference to his medical needs against the existing defendants (Roy and Reiser), and one count of unlawful release or disclosure of health records against Roy, Reiser, and Karow, in violation of Minn. Stat. §§ 144.293 and 13.01-.90.

The Court will deny this motion because the proposed new Eighth Amendment claim fails to state a claim on which relief could be granted and supplemental jurisdiction over the proposed state law claim should not be exercised. The deliberate indifference claim against Roy and Reiser fails for the same reasons discussed above, because Carter's proposed new allegations, like the existing allegations, do not allege that Roy or Reiser were involved in the incident or participated in any treatment decisions, let alone facts that amount to deliberate indifference to his serious medical needs.

There is no independent basis for federal jurisdiction over the proposed state law claim, and thus it would be futile to allow it. Accordingly, the Court denies as futile the motion for leave to supplement the complaint. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Accordingly, based on all the files, records, and proceedings herein,

1. **IT IS HEREBY RECOMMENDED** that:

   a. Defendants Tom Roy and Bruce Reiser's Motion to Dismiss [Doc. No. 40]

be **GRANTED** as to all claims against them and **DENIED** as to the

request to stay this action;

    b.  Carter's claims brought pursuant to 42 U.S.C. § 1983 be **DISMISSED**

       **WITH PREJUDICE**;

    c.  All other claims be **DISMISSED WITHOUT PREJUDICE**;

    d.  Carter's Motion for Injunctive Relief [Doc. No. 49] be **DENIED**; and

    e.  **JUDGMENT BE ENTERED ACCORDINGLY**; and

2.  **IT IS HEREBY ORDERED** that Carter's Motion for Leave to Supplement the

Complaint [Doc. No. 89] is **DENIED.**


Dated: January 7, 2020          _s/ Hildy Bowbeer_ _____
                                  Hildy Bowbeer
                                  United States Magistrate Judge


## <u>NOTICE</u>

**Filing Objections:** The Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).